

LAPIS
Advisers, LP

Lapis Advisers, LP
12 Funston Avenue, Suite A
The Presidio of San Francisco
San Francisco, CA 94129

June 26, 2015

Mr. Carl Schultz
Receiver
St. J Apartments Limited Partnership
6807 West 12th Street, Suite A
Little Rock, AR 72204

    Re:  <u>Proposal for Debtor-in-Possession Financing</u>

Dear Mr. Schultz:

We understand that you have been appointed Receiver pendente lite of St. J Apartments Limited Partnership (the "<u>Partnership</u>") by the Circuit Court of Pulaski County, Arkansas, 17th Division (the "<u>Receiver</u>"). We further understand that the Partnership owns and operates the St. John's Apartments in Pulaski County, Arkansas (the "<u>Project</u>") and that your company, United Properties Management, Inc. ("<u>UPM</u>" or "<u>Project Manager</u>"), serves as property manager for the Project.

Lapis Advisers, LP ("<u>Lender</u>") is pleased to submit a proposal regarding terms and conditions (the "<u>Term Sheet</u>") upon which Lender may provide secured superpriority financing (the "<u>Financing Facility</u>") to the Partnership (also referred to herein as "<u>Borrower</u>"). The Financing Facility shall be provided in accordance with this Term Sheet and upon the Partnership filing for Chapter 11 Bankruptcy in the United States Bankruptcy Court for the Eastern District of Arkansas and being conferred Debtor-in-Possession status under the Bankruptcy Code. The Financing Facility shall consist of a Debtor-in-Possession Loan (the "<u>DIP Loan</u>") that provides funding for the Transaction (defined below).

You have advised us that Borrower is planning to file a voluntary petition under Chapter 11 of the United States Bankruptcy Code as part of a plan to either (1) restructure the Borrower's debt and transition control of its general partner to a new owner (the "<u>Restructuring</u>") or (2) sell the Project (the "<u>Project Sale</u>"). The Restructuring and the Project Sale are collectively referred to herein as the "<u>Transaction</u>". You have also informed us that Borrower has engaged legal professionals (the "<u>Legal Advisors</u>") and that the Financing Facility is required to complete the Transaction.

This Term Sheet is for discussion purposes only, and is not and should not be construed as a commitment of any kind nor does it purport to summarize all of the terms, conditions, covenants, representations, warranties and other provisions that would be required under the proposed Financing Facility and contained in the definitive agreements with respect to this transaction (collectively, the "<u>Definitive Documentation</u>").

This Term Sheet is strictly confidential and is only to be shared internally with Borrower's management and its attorneys and professional advisors, and not with any other third parties (including, but not limited to, any other potential debt or equity investors in the Borrower or any of its affiliates). Any disclosure or use of the contents hereof in negotiations with other debt or equity investors is strictly prohibited. Any commitment to provide the proposed Financing Facility by Lender is subject to Lender's satisfactory completion of due diligence and review by Lender's counsel and other advisors.

EXHIBIT A



Based on that understanding, the remainder of this Term Sheet sets forth, on a preliminary basis, a summary of the terms and conditions of the proposed Financing Facility. Please do not hesitate to contact us if questions arise.

## SUMMARY TERMS AND CONDITIONS

| | |
|---|---|
| **Borrower(s):** | St. J Apartments Limited Partnership |
| **Lender:** | Lender and/or its affiliates. |
| **Use of Proceeds:** | Proceeds shall be used to satisfy certain specified past due obligations, Project improvement and rehabilitation costs, operating expenses in the ordinary course of business, Transaction related expenses, and costs and expenses incurred in marketing the Project for sale, all as set forth in the Budget (as defined below). |
| **Financing Facility:** | The Financing Facility shall be in an amount not to exceed $750,000.00. Upon filing the Chapter 11 petition, approval shall be sought for the DIP Loan which shall be determined based on the Budget. |
| **Interest:** | The DIP Loan shall accrue interest at the rate of 15% per annum (the "DIP Loan Interest Rate") (calculated monthly) and is due upon DIP Loan Maturity (defined below). Upon the occurrence of an Event of Default (to be defined in the Definitive Documentation), all amounts due and owing under the DIP Loan shall immediately begin bearing interest at the maximum rate of interest which Lender may by law charge and. |
| | Lender shall realize a minimum multiple of invested capital (in the form of interest) of 1.08x, exclusive of the $25,000.00 Closing fee described below. |
| **Fees:** | Closing fee of $25,000.00 is due and payable upon an order approving the DIP Loan or added to the initial amount drawn on the DIP Loan. |
| **Maturity:** | The DIP Loan matures on the earlier of (a) 135 calendar days after the Chapter 11 petition filing date or 90 calendar days after submission of a Chapter 11 plan of reorganization, whichever is sooner, (b) the effective date of a Chapter 11 plan of reorganization acceptable to Lender and Bond Trustee, (c) the conversion or dismissal of the Chapter 11 case, (d) acceleration of the DIP Loan in accordance with the terms of the Definitive Documentation, or (e) any sale of substantially all of Borrower's assets (collectively, the "DIP Loan Maturity"). |
| **Security and Priority:** | The Financing Facility shall be provided a perfected first priority |

CONFIDENTIAL



|  |  |
|---|---|
|  | security interest in accounts, inventory, equipment, cash, deposit accounts, investment property, all real property, general intangibles, instruments, documents, chattel paper (i.e., all personal property) (collectively, the "Collateral"), subject only to customary exceptions contained in the Chapter 11 case order approving the DIP Loan and certain accounts and deposits held by the Bond Trustee under the current bond indebtedness. |
|  | The Chapter 11 case order approving the DIP Loan will include the granting of a superpriority administrative claim, a first priority lien under 11 U.S.C. § 364 on the Collateral. |
|  | The Plan of Reorganization confirmation order or any order approving the sale of substantially all of Borrower's assets shall provide for full repayment of the DIP Loan and termination of the Financing Facility. |
| **Cash Management:** | Borrower to provide Lender with deposit account control agreements covering deposit accounts. |
| **Budget:** | Borrower and Lender shall agree upon a budget (the "Budget") to be prepared by Borrower and approved by Lender. The Budget will show monthly results for the period from July 2015 through November 2015. The Budget shall include projected cash receipts, cash disbursements, cash balances, amounts drawn under the Financing Facility, and such other information as shall be agreed by Borrower and Lender. |
| **Property Manager and Receiver Agreement:** | The Project Manager shall enter into a property manager agreement acceptable to Lender that, as long as no event of default exists under the Financing Facility, provides for management fees as a percentage of collected rents of 9% during the pendency of the Bankruptcy (the "Management Fee"). This Management Fee is inclusive of any Receiver fee arrangement and property manager fee arrangement. No other management or receiver type fee is permissible while the DIP Loan remains outstanding. |
|  | The Management Fee shall be the last operating expense paid on a monthly basis and only paid as long as (i) no defaults exist under the Financing Facility, (ii) the Partnership is current with all accounts payable, taxes, and other Partnership liabilities, and (iii) at each month end, the Partnership's operating account cash balance shall not be less than the ending cash balance shown on the Budget. |
| **Representations,** | The Definitive Documentation will include representations, |

CONFIDENTIAL

3



| | |
|---|---|
| **Warranties, Covenants, Events of Default:** | warranties, covenants, events of default and other provisions customary for Chapter 11 financing facilities of this nature. |
| **Financial/Budget Covenants:** | The Definitive Documentation will not contain standard financial covenants. Instead, Borrower will be required to adhere to the Budget subject to variances to be negotiated (e.g., receipts not less than a specified percentage, expenses not greater than a specified percentage, Project occupancy thresholds and targets). |
| **Transaction Process Milestones:** | Borrower shall be required to meet Transaction process milestones, including, but not limited to: (i) submission of a Chapter 11 disclosure statement and plan of reorganization to the Bankruptcy Court for approval within forty-five (45) calendar days of the date the Chapter 11 petition is filed; (ii) entry of an order approving the disclosure statement within forty-five (45) calendar days of the filing of the disclosure statement; (iii) entry of an order confirming the Chapter 11 plan of reorganization within ninety (90) days of such submission; and (iv) compliance with all of the requirements of a Chapter 11 debtor-in-possession, meeting specified occupancy rates and cash flow covenants, and keeping all taxes current. |
| | In the event Borrower fails to meet any one or more of the Transaction process milestones, Lender shall have the right to *ex parte* relief from the automatic stay to foreclose its lien on the Collateral, to remove and replace the Receiver and/or Property Manager, as well as any other rights available to Lender under the United States Bankruptcy Code and state law. |
| | Transaction process milestones may be extended or modified upon the written request of Borrower at the sole approval and discretion of the Lender. |
| **Conditions Precedent:** | DIP Loan conditions precedent shall include, among others, (a) Lender's completion of business and legal due diligence, (b) Lender's receipt and approval of the Budget, (c) completion of the Definitive Documentation, and (d) engagement of a multi-family property broker, acceptable to Lender, to seek offers for the Project. |
| **Miscellaneous:** | Borrower shall pay Lender's out of pocket fees and expenses (including all reasonable fees and expenses of attorneys and other professionals engaged by Lender). |
| **Governing Law:** | State of Arkansas. |
| **Definitive Documentation:** | The Definitive Documentation shall include such credit and security documents as Lender shall consider appropriate, all of which shall be mutually acceptable to Borrower and Lender. The Definitive Documentation shall also include a form of debtor in possession |



        credit agreement and forms of interim and final financing orders that would be acceptable to both parties in a Chapter 11 case.

By countersigning this letter, the Borrower agrees that (a) the Borrower will reimburse the Lender for all third-party costs associated with the proposed Financing Facility (the "Reimbursable Expenses"), including reasonable fees of Lender's counsel, (b) neither this Term Sheet nor its contents will be disclosed publicly or privately by you except to those individuals who are your officers, employees or advisors who have a need to know of them as a result of their being specifically involved in the proposed Financing Facility, and then only on the condition that such matters may not be further disclosed, and (c) regardless of whether the Financing Facility closes, the Borrower hereby indemnifies Lender and its affiliates, and the directors, officers, employees, and representatives of any of them, harmless from and against all claims, expenses damages, and liabilities of any kind which may be incurred by, or asserted against, any such person in connection with, or arising out of, this Term Sheet or the transactions contemplated thereby, including claims of any brokers or anyone claiming fees in connection with the Financing Facility.

We thank you for contacting us and look forward to working with you on this matter.

        Sincerely,

        *[signature]*

        Kjerstin Hatch
        Managing Principal
        Lapis Advisers, LP

**ST. J APARTMENTS LIMITED PARTNERSHIP**
**BUDGET - APPLICATION OF DIP LOAN PROCEEDS**

| Entity | Description | | Amount | Note |
|---|---|---|---:|---|
| UPM Reimbursements | Fees owed, payroll, and professional fees | $ | 295,809.88 | [1] |
| Pulaski County Treasurer | Real Property Taxes | | 61,108.47 | [1] and [2] |
| St. J Apartments LP | Operating Cash Advance | | 265,676.99 | [1] and [2] |
| Williams and Anderson | Bankruptcy Planning Services | | 39,395.64 | [3] |
| Williams and Anderson | Bankruptcy Planning Services | | 29,694.02 | [3] |
| Williams and Anderson | Retainer | | 18,000.00 | [3] |
| Frederick S. Wetzel, III, P.A. | Lapis Counsel - Bankruptcy Retainer | | 10,000.00 | [3] |
| Frederick S. Wetzel, III, P.A. | Lapis Counsel - Fees Incurred to Date | | 5,315.00 | [3] |
| Lapis | DIP Loan Closing Fee | | 25,000.00 | [3] |
| **Total DIP Loan** | | **$** | **750,000.00** | |
| Less: Amounts Previously Paid | | | (127,404.66) | [3] |
| **Net Cash Proceeds Advanced Upon DIP Loan Order Issuance** | | **$** | **622,595.34** | [1] |

**Footnotes:**

[1] Amounts to be advanced to UPM, the Pulaski County Treasurer, and St. J Apartments LP upon issuance of DIP Loan Order.

[2] The Real Property Taxes will increase for additional interest and penalties accrued through date of payment--and a reduction for this same amount will be made to the Operating Cash Advance.

[3] Amounts previously funded by Lapis at the Petition Date.

**ST. J APARTMENTS LIMITED PARTNERSHIP**
**BUDGET - JULY 2015 THROUGH NOVEMBER 2015**

| | | | | | Monthly Budget | | | | Total 5-Mos. 2015 |
|---|---|---|---|---|---|---|---|---|---|
| | | | | Jul-15 | Aug-15 | Sep-15 | Oct-15 | Nov-15 | |
| **RENT FUNDAMENTALS** | | | | | | | | | |
| Unit Format | Units | | Rent | | | | | | |
| 1 BD / 1 BA | 96 | $ | 560 | 55 | 55 | 55 | 55 | 55 | 55 |
| 2 BD / 1 BA | 96 | | 610 | 36 | 36 | 36 | 36 | 36 | 36 |
| 3 BD / 1 BA | 32 | | 650 | 15 | 15 | 15 | 15 | 15 | 15 |
| Total / Weighted Average | 224 | $ | 594 | 106 | 106 | 106 | 106 | 106 | 106 |
| Gross Rent at Current Rates | | | | $ 62,510 | $ 62,510 | $ 62,510 | $ 62,510 | $ 62,510 | $ 312,550 |
| Less: Turnover / Vacancy [1] | 8.0% | | 1.5 | (630) | (630) | (630) | (630) | (630) | (3,150) |
| Net Rent at Current Rates | | | | $ 61,880 | $ 61,880 | $ 61,880 | $ 61,880 | $ 61,880 | $ 309,400 |
| **INCOME STATEMENT (CASH BASIS)** | | | | | | | | | |
| Income | | | | | | | | | |
| Unit Rentals | | | | $ 61,880 | $ 61,880 | $ 61,880 | $ 61,880 | $ 61,880 | $ 309,400 |
| Miscellaneous | | | | 700 | 700 | 700 | 700 | 700 | 3,500 |
| Total Income | | | | $ 62,580 | $ 62,580 | $ 62,580 | $ 62,580 | $ 62,580 | $ 312,900 |
| Operating Expenses | | | | | | | | | |
| Payroll | | | | $ 24,356 | $ 24,356 | $ 24,356 | $ 24,356 | $ 24,356 | $ 121,781 |
| Grounds / Landscaping | | | | 1,800 | 1,800 | 1,800 | 1,800 | 1,800 | 9,000 |
| Security | | | | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 15,000 |
| Repair & Maintenance | | | | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 30,000 |
| Trash Removal | | | | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 | 5,500 |
| Supplies | | | | 300 | 300 | 300 | 300 | 300 | 1,500 |
| Office Expenses | | | | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 7,500 |
| Pest Control | | | | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 5,000 |
| Electric | | | | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 5,000 |
| Plumbing | | | | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 5,000 |
| Heating and A/C | | | | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 20,000 |
| Janitorial | | | | 180 | 180 | 180 | 180 | 180 | 899 |
| Miscellaneous / Health Insurance | | | | 3,800 | 3,800 | 3,800 | 3,800 | 3,800 | 19,000 |
| Utilities | | | | 24,583 | 24,583 | 24,583 | 24,583 | 24,583 | 122,917 |
| Real Estate Taxes | | | | - | - | - | - | - | - |
| Property Insurance | | | | 4,338 | 4,338 | 4,338 | 4,338 | 4,338 | 21,689 |
| Total Operating Expenses | | | | $ 77,957 | $ 77,957 | $ 77,957 | $ 77,957 | $ 77,957 | $ 389,786 |
| Net Operating Income / (Loss) - Normal Course | | | | $ (15,377) | $ (15,377) | $ (15,377) | $ (15,377) | $ (15,377) | $ (76,886) |
| Management and Other Expenses | | | | | | | | | |
| Management Fee | | | | $ 5,569 | $ 5,569 | $ 5,569 | $ 5,569 | $ 5,569 | $ 27,846 |
| Legal & Accounting | | | | 4,753 | 4,753 | 4,753 | 4,753 | 4,753 | 23,765 |
| Capital Expenses and Code Resolutions | | | | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 50,000 |
| Bankruptcy Case Professional Fees | | | | - | - | 25,000 | - | 25,000 | 50,000 |
| Total Management and Other Expenses | | | | $ 20,322 | $ 20,322 | $ 45,322 | $ 20,322 | $ 45,322 | $ 151,611 |
| Net Earnings / (Loss) - Normal Course | | | | $ (35,699) | $ (35,699) | $ (60,699) | $ (35,699) | $ (60,699) | $ (228,497) |
| Cash Reconciliation | | | | | | | | | |
| Cash - Beginning Balance | | | | $ 265,677 | $ 229,978 | $ 194,278 | $ 133,579 | $ 97,880 | $ 265,677 |
| Less: Cash Burn | | | | (35,699) | (35,699) | (60,699) | (35,699) | (60,699) | (228,497) |
| Cash - Ending Balance (Min. Cash Balance Test) | | | | $ 229,978 | $ 194,278 | $ 133,579 | $ 97,880 | $ 37,180 | $ 37,180 |
| DIP Loan | | | | | | | | | |
| Balance - Beginning | | | | $ 750,000 | $ 759,375 | $ 768,867 | $ 778,478 | $ 788,209 | $ 750,000 |
| Interest Accrual | 15.0% | | | 9,375 | 9,492 | 9,611 | 9,731 | 9,853 | 48,062 |
| Balance - Ending | | | | $ 759,375 | $ 768,867 | $ 778,478 | $ 788,209 | $ 798,062 | $ 798,062 |
| Minimum Multiple Test | 1.08x | | | | | | | | $ 810,000 |

Footnotes:
[1] Based on the historical average 8% annual turnover rate and the loss of 1.5 months of rent for each vacating tenant.